## KANSAS CITY, P. & G. R. CO. v. SPELLMAN.

(Circuit Court of Appeals, Fifth Circuit. May 29, 1900.)

### No. 917.

1. INJURY TO EMPLOYE—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

   Where the evidence in an action for injury sustained by reason of the alleged negligence of defendant in using on its engine a defective pilot bar shows that the pilot bar of the engine was bent at the time of the accident, that it is very dangerous to attempt to make a coupling with such a pilot bar, and that plaintiff was acting within the scope of his regular employment, there is sufficient to go to the jury on the question of defendant's negligence.

2. CONTRIBUTORY NEGLIGENCE—PATENT DEFECT.

   Where, in an action for injury sustained by reason of a defective pilot bar on defendant's engine, the defendant pleaded contributory negligence on plaintiff's part, and the evidence tended to show that the defect was not a patent one, a charge that to make plaintiff guilty of contributory negligence it must appear that the defect was so visible that a man could not overlook it, except by gross negligence, is not erroneous.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Action by John Spellman against the Kansas City, Pittsburg & Gulf Railroad Company for injuries sustained by plaintiff while in defendant's employ. From a judgment in favor of plaintiff, the defendant brings error. Affirmed.

H. Glass, W. L. Estis, and J. J. King, for plaintiff in error.

Dan T. Leary, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. John Spellman, the defendant in error, brought his action in the state district court of Bowie county, Tex., against the Kansas City, Pittsburg & Gulf Railroad Company, the plaintiff in error, to recover damages for personal injuries received by him, and caused by the negligence, as he alleged, of the

railroad company. He alleged that on December 7, 1897, he was engaged in the employment of the railroad company as a brakeman on one of its freight trains, and was injured in attempting to couple the pilot bar of the engine to a flat car on the track, in doing which his right foot and leg were caught between the pilot on the engine and the brake beam on the flat car, and so crushed as to necessitate amputation; that the end of the pilot bar with which he attempted to make the coupling was in a defective condition, being so bent that it would not enter the drawhead of the flat car; that he had no knowledge of the defective condition of the pilot bar until just as he went to make the coupling, when it was too late to prevent the injury; that he had been on that train only an hour prior to the time he was hurt, and had not had occasion to use the pilot bar prior to the time when he received his injury; that the railroad company knew of the defect, or by proper inspection could and should have known of it; that the injury caused him great pain and permanent disability to work in the calling, and to the extent that he had theretofore done. He alleged his damages at $25,000. The railroad company, by due proceedings, removed the cause from the state district court of Bowie county, Tex., into the circuit court of the United States for the Eastern district of Texas. The defenses pleaded were—First, a general denial; and, second, contributory negligence. The trial resulted in a verdict in Spellman's favor for the sum of $4,012.50, on which judgment was duly entered.

Of the errors assigned two require notice. These are as follows:

"(2) The court erred in overruling the motion made by defendant after the conclusion of the argument, and before the court had charged the jury 'that the court instruct the jury to find a verdict for the defendant.'"

"(10) The court erred in instructing the jury as he did in his main charge upon the subject of patent defect, and over the objection and specifications of the defendant, as follows: 'In other words, the rule is, if the bar was defective, so patently defective that anybody could not have failed to see it, why the party using it is charged with notice of its condition. Now, the employé, as I understand in regard to machinery, is not charged with any duty of inspection. He is not charged with that duty. He is not charged with the duty to go and see that the machinery is in proper condition in the first instance; but if the machinery is so openly and visibly defective that a man could not fail to observe it, why, then, if it was in that condition, it would debar the plaintiff from a recovery, but upon that point it must be so open, so patent, so visible, that a man could not overlook it except by gross negligence. That is what is meant by a patent defect.'"

James Baker, a witness for the plaintiff, said that he was braking on the same train with Spellman at the time he was hurt, on December 7, 1897; that he (the witness) knew positively that the end of the pilot bar on that engine was bent before it left Shreveport that morning; that the end of the bar was bent two inches or more from a straight line from the heel to the point; that it is very dangerous to attempt to make a coupling with a pilot bar to a Janney coupler when the end of the pilot bar is bent; that it is very dangerous and unsafe, for the simple reason that the slot of the knuckle in the drawbar is not over three inches wide,—that is, in the face of the slot,—and the end of the bar is two inches, which would leave a half inch play on each side, and, if the bar was bent, of course if it ever struck

the top or bottom it would throw it out. On recross-examination he said that in going around the train he found the necessity to use a small pin, and went to the pilot of the engine and got one; that while he was there he discovered that the pilot bar was bent; that the bend was not noticeable while the bar was lying down in its socket; that there is a slot there for the bar to lie in, and he had to raise the bar because the pin was run through that way, and rested in there; that he intended to tell Spellman about its being bent, but that he had so many other duties to attend to that he overlooked telling Spellman.

Spellman, testifying on his own behalf, said that he was head brakeman on the train; that it was the duty of the head brakeman to do what work is required at the head end of the train, to throw switches to go into side tracks, and let the engine into side tracks, and make couplings on the engine; that this engine had a pilot bar; that pilot bars are very heavy, weighing from 130 to 165 pounds; that the head brakeman when he undertakes to go in a side track after cars controls the movement of the engine by his signals to the engineer; that when the train reached Mooringsport, where the injury occurred, it was to go on the side track and couple on two flat cars loaded with gravel; that they were heavy; that there he (Spellman) got out and threw the switch while the train was moving slowly on towards the flat cars at the rate of about three miles an hour, and when it reached him, about 30 feet before it reached the flat car with which the coupling was to be made, he got on the engine, and when it was within 15 or 16 feet of the car that was to be coupled he began to pick up the pilot bar with which the coupling was to be made; that he was watching the distance between the car and the engine so as to be ready and have the bar up in time; that he did not look particularly at the end of the bar until he was very near the coupling, when there was no time or opportunity to do anything except to attempt to make the coupling with the bar in its defective condition and the train in its then present movement; that such couplings were difficult to make, but that he had frequently made them, and did not doubt that if the pilot bar had been in proper condition he would have made it safely; that after he received his injury, and the defective condition of the bar was known, the coupling was made with this same pilot bar by taking care to bring the train up "so easy that it would not break an eggshell."

Witnesses offered by the defendant gave evidence tending to show that the bar was not bent when the train left Shreveport. Numerous witnesses were examined, cross-examined, and re-examined at great length, and their testimony, given in narrative form, covers nearly 50 pages of the printed record. So much as we have recited is not quoted with literal accuracy, but is given substantially as we digest it from the testimony of the witnesses referred to, and we think is sufficient to show that the assignment of error numbered 2, given above, is not well taken.

W. J. Miller, a witness for the defendant below, among other things, testified, substantially, that as division master mechanic he had charge of the engine at that time from Mena to Port Arthur; that

it was the duty of an engineer on the arrival of an engine at the terminal to inspect it from one end to the other, and after making the inspection to report any work necessary to be done, to make an entry thereof on a register or book kept in the roundhouse for that purpose, and when an engine is in the roundhouse it is customary for the roundhouse foreman also to inspect it, and that the man who is assigned to do the work on the engine also examines it; that after the work has been done the engineer who is to go out on the engine goes around and examines the parts that have been repaired; that he looks over it in a general way; that, if there is a different man that goes out on the engine from the one who came in on her, he always goes and looks at the book to see what was reported; that he (the witness) inspected the engine whenever he had an opportunity; that he saw the engine in question on the morning of December 7, 1897, walked around it, took a casual glance at everything, looked at the pilot, as he always does, and did not notice anything the matter with it whatever; that if the pilot bar had been cupped up or bent up he would certainly have noticed it.

This evidence as to the duty and method of inspection of this particular class of machinery, taken in connection with the closing paragraph recited from the testimony of the witness Baker, sufficiently explains and fully justifies that part of the charge of the trial judge to which the tenth assignment of error levels its criticism. The whole of the charge given by the judge is shown in the record, and, when the portion criticised is considered with reference to the charge as a whole, we are not able to see that even the last clause of that portion of the charge to which objection is made is justly subject to criticism. The charge of the court, to be instructive, must have relation to the pleadings and the proof, and, in the very nature of the case, takes color more or less from the character of the contention as pressed in oral argument by learned and experienced counsel in pressing the issue of contributory negligence. Upon a careful consideration of the whole record, of the very able brief submitted by the attorneys for the plaintiff in error, and of the interesting oral argument presented by the attorney who appeared before us at the hearing, we find no error in the action of the circuit court for which the judgment should be reversed, and it is therefore affirmed.